IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KENNETH S. PRATHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-04-1164-R |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. §405(g) of the final decision of

Defendant Commissioner denying his application for disability insurance benefits under Title

II of the Social Security Act, 42 U.S.C. §416(I), 423.  Defendant has answered the Complaint

and filed the administrative record (hereinafter TR___).  Both parties have briefed the issues,

and the matter has been referred to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. §636(b)(1)(B).  For the following reasons, it is recommended that

the Commissioner's decision be reversed and remanded for further proceedings.

1

I. Background

Plaintiff filed his application for benefits on May 22, 2002 (protective filing date), initially alleging that he became disabled on January 15, 1999, due to knee replacement surgery, spina bifida, high blood pressure, and being "overweight." (TR 55-57, 71, 76). Plaintiff stated that he had worked in the oil fields and as a foreman in a feed yard, and that he last worked in October 1996. (TR 57, 77). Plaintiff's application was administratively denied. (TR 27, 28). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Hiltbrand ("ALJ") on March 3, 2004, at which Plaintiff and a vocational expert ("VE") testified. (TR 233-270). At this hearing, Plaintiff orally asked to amend the disability onset date to January 1, 2002, and this request was granted. (TR 237). Subsequently, the ALJ issued an opinion in which the ALJ found that Plaintiff has severe impairments due to spina bifida surgery in 2002, knee replacement surgery in 1995, hypertension controlled by medications, obesity, back pain, and leg pain. (TR 21). Despite these impairments, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform work at the light exertional level with the restriction that the work require no more than occasional stooping. (TR 20). Relying on the VE's testimony regarding the availability of jobs for an individual with this RFC for work, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. (TR 20-21). Examples of the jobs which the ALJ found Plaintiff could perform include general clerk, production operator, and telephone salesman. (TR 20, 21). The agency's Appeals Council declined Plaintiff's request for review

of the administrative decision (TR 5-7).  Plaintiff now seeks judicial review of the final

decision of the Commissioner embodied in the ALJ's determination.

II. Plaintiff's Claims and Defendant's Response

Plaintiff contends that the ALJ erred in evaluating the opinions of his treating

physicians, Dr. Gill and Dr. Anwar, and that there is not sufficient evidence to support the

ALJ's finding that Plaintiff has the RFC to perform light work.  The Commissioner responds

that no error occurred in the ALJ's evaluation of the evidence and that substantial evidence

in the record supports the ALJ's decision.

III. Standard of Review

Judicial review of this Complaint is limited to determining whether the

Commissioner's decision is based upon substantial evidence and whether the correct legal

standards were applied.  Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991).  The court

will look to the record as a whole to determine whether the evidence which supports the

Commissioner's decision is substantial in light of any contradicting evidence.  Nieto v.

Heckler, 750 F.2d 59, 61 (10th Cir. 1984); Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir.

1983)(per curiam).  If the Commissioner fails to apply the correct legal standard or

substantial evidence does not support the Commissioner's decision, the court may reverse

the Commissioner's findings. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984)(per

curiam).  The court may not reweigh the evidence or substitute its judgment for that of the

Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th

Cir. 1992). To find that the Commissioner's decision is supported by substantial evidence

in the record, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion.  Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §416(I).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  See 20 C.F.R. §404.1520(b)-(f) (2004); see also Williams v. Bowen, 844 F.2d 748, 750-752 (10th Cir. 1988)(describing five steps in detail).  The claimant bears the initial burden of proving that he has one or more severe impairments. 20 C.F.R. §404.1512 (2004); Turner v. Heckler, 754 F.2d 326, 328 (10th Cir. 1985).  Where the plaintiff makes a *prima facie* showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show "the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." Turner v. Heckler, 754 F.2d at 328; Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

IV. Medical Evidence

The medical evidence reflects that while Plaintiff was working in late 1995 he was injured and subsequently underwent surgery to replace his left knee. (TR 215-220).  Because of Plaintiff's complaint of persistent back pain, an x-ray of Plaintiff's lumbar spine was conducted in March 1996, which Plaintiff's treating surgeon interpreted as showing evidence

4

of spina bifida occulta at level L4 with spondylolysis and grade I spondylolisthesis at one level.  Magnetic resonance imaging ("MRI") testing of Plaintiff's back showed evidence of bulging discs at two levels and some facet joint changes with degenerative changes but no nerve root impingement. (TR 213-214).  His back pain improved with an epidural steroid block injection, and his knee also improved. (TR 212).   In September 1996, Plaintiff's treating physician released him to return to work without restrictions. (TR 208-209).

In January 2002, Plaintiff complained to his treating physician, Dr. Gill, of chronic neuropathic leg pain, and the physician noted there was no clear origin for this pain. (TR 161).  Pain medication was prescribed. (TR 161).  Plaintiff again complained of bilateral neuropathic leg pain in March 2002, for which Dr. Gill increased the dosage of pain medication, prescribed a low dosage anti-depressant medication for sleep, and referred Plaintiff to a neurosurgeon, Dr. Lamprich. (TR 160).  Plaintiff was initially evaluated by Dr. Lamprich in April 2002.  Dr. Lamprich noted that MRI testing of Plaintiff's lumbar spine revealed evidence of tethered cord syndrome, spina bifida occulta, and dermal sinus.  (TR 136).  Plaintiff gave a history of back pain for many years, which was progressively worsening, and burning pain in both legs. (TR 136).  Plaintiff also gave a history of being overweight, hypertension, and ulcerated colon.  Dr. Lamprich advised Plaintiff to undergo back surgery, and Dr. Lamprich performed surgery on Plaintiff on April 25, 2002, consisting of resection of the cutaneous to dural dermal sinus tract, decompression lumbar laminectomy, intradural exploration with resection of extradural and intradural lipoma decompressing tethered cord and cauda equina syndrome.  (TR 132-135).  Plaintiff was discharged on April

30, 2002, with pain and muscle relaxant medications, and Dr. Lamprich noted Plaintiff's leg strength was normal at that time. (TR 127-128).  In follow-up reports, Dr. Lamprich noted in May 2002 that Plaintiff complained of some generalized weakness and tingling numbness in both legs, which the physician noted was expected, but no additional radicular deficit. (TR 125).  Plaintiff was encouraged to increase his daily walking for exercise. (TR 125).  In June 2002, Dr. Lamprich noted that he recommended Plaintiff consider a job change because heavy equipment operating would probably not be allowed. (TR 124).  An MRI conducted in July 2002 revealed evidence of degenerative disc and facet disease throughout Plaintiff's lumbar spine, mostly at the lower two levels, but no significant central spinal stenosis and only mild foraminal narrowing in the lower lumbar region. (TR 122-123).  In July 2002, Dr. Lamprich reported Plaintiff's walking, leg sensation, and gait continued to improve. (TR 121).  The medical record shows Plaintiff underwent physical therapy for his back between August 2002 and October 2002. (TR 181-205).  In January 2003, the therapist noted that although Plaintiff was making good progress with endurance and strength he still rated his pain as "5" on a scale of "0-10." (TR 199).  Because of continuing complaints of headaches, MRI scans of Plaintiff's lumbar spine and head were conducted in September 2002, and Dr. Lamprich noted he saw nothing specifically abnormal in these tests. (TR 115, 117, 118).  In September 2002, Dr. Lamprich reported Plaintiff's continued complaints of headaches and burning pain in his legs but noted he found good incision healing, no sign of spinal fluid or leakage, and that a full neurological examination of Plaintiff was normal. (TR 115-116).

6

In August 2002, Plaintiff returned to Dr. Gill complaining of severe headaches for three to four weeks, worse with activity and better with lying down, and numbness in his feet and legs. (TR 158-159). Dr. Gill noted a neurological examination of Plaintiff's lower extremities was normal. He prescribed pain medication and advised Plaintiff to continue the physical therapy. (TR 158-159). In September 2002, Plaintiff saw Dr. Gill who noted Plaintiff was not coping well, was "generally despondent," and that his mood and affect were depressed. Dr. Gill diagnosed a chronic pain syndrome status-post back surgery with spinal stenosis and persistent neuropathy in the legs, hypertension, and headache syndrome. (TR 158). Dr. Gill prescribed pain and antidepressant medications. (TR 158). In October 2002, Plaintiff again saw Dr. Gill, who noted that Plaintiff complained of continuing headaches, back and leg pain, fatigue, depression, and "situational stressors." (TR 157). The dosage of prescribed pain and anti-depressant medications was increased. (TR 157). By December 2002, Plaintiff reported his headaches were better, and Dr. Gill noted a physical examination was normal and that Plaintiff exhibited "marked overall improvement." (TR 156). However, in January 2003, Plaintiff complained of dizziness and back spasms. (TR 155). Dr. Gill noted Plaintiff continued to have significant back problems and hypotension causing his dizziness, for which different blood pressure medication was prescribed. (TR 155). In January 2003, Dr. Gill authored a letter addressed "To Whom It May Concern" in which the physician stated Plaintiff was diagnosed with lumbar spinal stenosis with chronic radiculopathy in both lower extremities and that because of this significant impairment Plaintiff could not do any kind of repetitive bending or stooping and could not stand or walk for long periods of time.

7

(TR 138).  In conclusion, Dr. Gill stated that Plaintiff "is for all practical purposes disabled

from  any significant vocation which requires substantial physical activity." (TR 138).

The medical record contains two treatment records for Plaintiff by Dr. Anwar in July

2003 and February 2004.  In July 2003, Dr. Anwar noted Plaintiff's complaint that he had

been dizzy lately, was unable to sleep or work, and that his lower extremities felt as if they

were on fire. (TR 224).  Dr. Anwar noted his diagnostic impressions of hypertension, obesity,

hyperlipidemia, hypogonadism, painful peripheral neuropathy of unknown origin, chronic

pain disorder in the low back, and insomnia. (TR 224).  Dr. Anwar prescribed medications

and noted Plaintiff probably needed a neurological evaluation. (TR 224).  In February 2004,

Dr. Anwar noted Plaintiff returned for treatment for "multiple problems" including chronic

pain disorder in the low back, knee, and hip, and a new complaint of bladder incontinence.

(TR 222).  The physician noted that Plaintiff exhibited muscle spasm and tenderness and

positive straight leg raising in both legs at 30 degrees. (TR 222).  He noted his diagnostic

impression of probable neurogenic bladder, peripheral neuropathy in both legs with chronic

pain, low back pain, hypertension, hyperlipidemia, obesity, and history of erectile

dysfunction. (TR 222).  Dr. Anwar prescribed four medications and advised Plaintiff to

continue taking four other medications. (TR 222). Dr. Anwar completed a functional capacity

questionnaire in February 2004 in which the physician noted that because of Plaintiff's

impairments, including hypertension, hyperlipidemia, reflux, peripheral neuropathy in both

legs, low back pain, spinal stenosis status-post surgery, and left leg pain due to artificial knee,

Plaintiff is unable to stand for more than 15 minutes, unable to walk more than 1/4 mile, can

sit for less than 2 hours, can lift less than 10 pounds, must lie down or rest six to eight times a day, and cannot "perform anything on sustained basis" due to constant, severe back pain, the need for position changes, the need for frequent rest intervals, and the use of prescription drugs for severe pain. (TR 225-228).

At his administrative hearing, Plaintiff testified (TR 239-265) that he has an eleventh grade education in which he was held back twice and attended special education classes, he reads and writes "very little," he has constant back pain, headaches, and spinal leakage since his spinal cord surgery, he has bladder and bowel incontinence every day, he feels that his legs "are just on fire all the time," he lies down 5 to 10 times during the day, and he sleeps only three to six hours at a time because of stinging and burning in his legs.  Plaintiff stated he takes 4 to 5 prescription pain pills every day and sleeping medication, that his only activity is watching television and grocery shopping a few times a month, that he walks 1/4 mile once a week, that he has difficulty climbing stairs, he cannot bend or stoop, he can lift only 5 pounds, and he can't stand anything touching his legs.

V. <u>Treating Physician's Opinions</u>

In the administrative decision, the ALJ followed the required sequential evaluation procedure and summarized the medical and non-medical evidence.  Concerning his evaluation of the evidence, the ALJ mis-read the record in significant respects.  At one point in his decision, the ALJ noted that between September 12, 2002 and October 3, 2002, Plaintiff was "able to complete two miles on the treadmill," among other activities, during physical therapy following his back surgery. (TR 16).  However, the record of Plaintiff's physical therapy

reflects that between August 20, 2002 and October 3, 2002, Plaintiff was at most able to walk on the treadmill for a total of fifteen minutes at a speed of two miles per hour. (TR 200-201). The ALJ also stated in his decision that Plaintiff's "back problem appears stable or he could not walk ½ mile a day." (TR 18). The ALJ does not indicate the source in the medical record for this statement. The ALJ may have been referring to Plaintiff's testimony at his hearing, but the ALJ mischaracterized this testimony when he states in the decision that Plaintiff "says he can walk ½ mile and tries to walk about once a week." (TR 17). Plaintiff actually testified that he cannot walk more than 1/4 mile at a time and that he tries to walk 1/4 mile once a week. (TR 262-263). Nothing in the record indicates Plaintiff's ability to walk ½ mile a day.

With respect to the ALJ's evaluation of Plaintiff's treating doctor's opinions, the standard for evaluating such opinions is well established. The prevailing standard for reviewing Plaintiff's claim that the ALJ erred in rejecting her treating physicians' opinions requires the Commissioner to determine what weight to give the medical opinions. "Generally, the ALJ must give controlling weight to a treating physician's well-supported opinion about the nature and severity of a claimant's impairments." Adams v. Chater, 93 F.3d 712, 714 (10th Cir. 1996). Thus, the ALJ "must first consider whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). "If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record....[I]f the opinion is

deficient in either of these respects, then it is not entitled to controlling weight." <u>Id.</u> Even if the treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527 and 416.927." <u>Id.</u> (quotation omitted). Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

<u>Id.</u> at 1031 (quotation omitted). "Under the regulations, the agency rulings, and [precedential] case law, an ALJ must give good reasons ... for the weight assigned to a treating physician's opinion" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the  reason for that weight." <u>Id.</u> at 1300 (quotations omitted).   A treating physician's opinion may be rejected if it is inconsistent with other medical evidence. <u>Castellano v. Secretary of Health & Human Servs.</u>, 26 F.3d 1027, 1029 (10th Cir. 1994).  <u>See</u> <u>Kemp v. Bowen</u>, 816 F.2d 1469, 1476 (10th Cir. 1987)("The treating physician rule governs the weight to be accorded the medical opinion of the physician who treated the claimant ... relative to other medical evidence before the factfinder, including opinions of other physicians.")(quotation omitted).  However, "[i]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." <u>Watkins</u>, 350 F.3d at 1301 (quotations omitted).

11

In this case, the ALJ erred in failing to evaluate at all the opinion of Plaintiff's treating physician, Dr. Gill, under this standard.   Although the ALJ's decision reflects his consideration of Dr. Gills' opinion concerning Plaintiff's RFC for work (TR 16), the ALJ's decision does not state what weight, if any, was given to this opinion.   It was the opinion of this long-term treating physician that Plaintiff cannot perform a job requiring that he walk or stand for long periods of time or perform repetitive bending or stooping.   The ALJ found that Plaintiff has the RFC to perform light work with no more than occasional stooping.   Light work is defined as work involving lifting objects weighing up to 20 pounds at a time, frequently lifting or carrying objects weighing up to 10 pounds, and mostly walking or standing, or sitting with pushing and pulling of arm or leg controls.   20 C.F.R. §404.1567(b)(2004).    The ALJ's RFC finding of the ability to perform light work is inconsistent with Dr. Gill's opinion that Plaintiff cannot walk or stand for long periods of time.

The Commissioner responds that the ALJ did not reject Dr. Gill's RFC opinion but rather "adopted" the finding because the specific jobs identified by the ALJ as falling within Plaintiff's RFC for work do not involve walking or standing for long periods of time, according to the descriptions of these jobs in the Dictionary of Occupational Titles.  However, the ALJ did not address the obvious inconsistency between Dr. Gill's opinion and the ALJ's RFC finding that Plaintiff is capable of performing light work, and there was no discussion in the record of the administrative hearing to resolve this inconsistency.   The ALJ erred in failing to evaluate Dr. Gill's RFC opinion under the prevailing standard, and this error

12

warrants the reversal of the Commissioner's decision and a remand for further proceedings to correct this error.

Plaintiff further contends that the ALJ erred in failing to adopt Dr. Anwar's RFC opinion. In the administrative decision, the ALJ recognized that Dr. Anwar provided an RFC opinion. The ALJ summarily rejected this RFC opinion, finding that the opinion was not "credible" because Dr. Anwar only saw Plaintiff one time for a bladder problem. The record contains two treatment notes showing Plaintiff was examined by Dr. Anwar in July 2003 and February 2004 and that Dr. Anwar refilled a medication prescription for Plaintiff in between those dates. (TR 221-224).

The question of whether a physician should be considered a treating physician was addressed in Doyal v. Barnhart, 331 F.3d 758 (10th Cir. 2003), in which the Tenth Circuit Court of Appeals reasoned that "'[t]he treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period of time* will have deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.'" Id. at 762 (quoting Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994)(emphasis in original)). "Moreover," [the court stated that] a longstanding treatment relationship provides some assurance that the opinion has been formed for purposes of treatment and not simply to facilitate the obtaining of benefits." Id. at 762-763. Because of the significance attached to a treating physician's opinion regarding a disability applicant's capacity for work, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort

of deferential treatment accorded to a treating physician's opinion." Id. at 763.  Under the regulations, a physician's opinion is entitled to special weight as that of a "treating source" when he or she has seen the claimant "a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment," and considering "the treatment the source has provided" and "the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." 20 C.F.R. §404.1527(d)(2).

The record shows that Dr. Anwar examined Plaintiff twice over a six month period of time.  His office records indicate he conducted thorough physical examinations of Plaintiff, conducted laboratory testing, was familiar with Plaintiff's medical history, and prescribed medications for Plaintiff for "multiple problems," including dizziness and lower extremity neuropathic pain.  In consideration of the record and the regulations, the ALJ both mis-read the record in stating that Dr. Anwar only saw Plaintiff once for a bladder problem and erred in failing to consider Dr. Anwar a treating physician.  Dr. Anwar had treated Plaintiff for a sufficient length of time and his treatment records reflected sufficiently extensive objective medical findings that he should be considered a treating physician for purposes of evaluating his RFC opinion under the prevailing standard.  Because of the ALJ's error in failing to consider Dr. Anwar a treating physician, the ALJ did not evaluate Dr. Anwar's RFC opinion to determine whether it should be given controlling weight.  In this regard, it must be noted that Dr. Anwar's RFC opinion does not, as the Defendant suggests, appear to be based solely on Plaintiff's complaints.  The physician's treatment records reflect ongoing treatment of

14

Plaintiff, objective medical findings supporting the RFC opinion, and no evidence suggesting that the physician treated Plaintiff merely for the purpose of Plaintiff's application for disability benefits.  Therefore, the Commissioner's decision should be reversed and remanded for further proceedings to correct these errors in the evaluation of Plaintiff's treating physician's opinions.

Because of these legal errors, the Plaintiff's second claim, that the ALJ's RFC finding is not supported by substantial evidence in the record, should not be reviewed at this time. The RFC determination is dependent upon the weight that is given to the RFC opinions by Plaintiff's treating physicians.  Thus, the predominant errors committed by the ALJ in considering the RFC opinions by Plaintiff's treating physicians make it impossible to consider the issue of Plaintiff's RFC for work.  Especially in light of the ALJ's mischaracterization of specific evidence in the record relevant to the RFC decision, including Plaintiff's subjective statements concerning his ability to walk and the physical therapist's records concerning Plaintiff's ability to walk on a treadmill following his back surgery, it would be premature to consider the issue of Plaintiff's RFC for work.  Suffice it to say that, even without considering the Plaintiff's treating physicians' RFC opinions, the medical record and Plaintiff's subjective statements concerning his daily activities and his abilities to lift, stand, walk, and perform postural movements do not suggest the ability to perform light work.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner to deny Plaintiff's application for disability insurance

15

benefits and REMANDING the decision for further proceedings consistent with this Report and Recommendation.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before  July 25th, 2005, in accordance with 28 U.S.C. §636 and LCvR 72.1.  The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656(10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this ____5th_____ day of ____July_____, 2005.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE